FOURNET, Justice.
 

 Mrs. Florence Guillory filed suit against her husband, Xavier O. Dupuy, for separation from bed and board on the ground of cruelty and asked for the custody of three of their minor children, Beulah, Una, and Hayden. Subsequently, on the same day, the husband instituted habeas corpus proceedings seeking to take from the custody and control of his wife and a major son, Maderis Dupuy, the minor Hayden. The cases were consolidated for purposes of trial and there was judgment rendered granting the wife a separation from bed and board and placing in her custody the three minor children named. There was also a judgment dismissing the habeas corpus proceedings. The husband has appealed from both judgments.
 

 
 *588
 
 The specific allegation of cruelty upon which the separation suit is based is that the plaintiff’s husband, on May 31, 1937, in their residence at Brooks, Louisiana, struck her “violently several times, knocking her to the floor and causing severe and painful injuries,” and threatened to “kill her with a rifle,” causing her to immediately leave the domicile in fear of her life.
 

 The defendant contends that there is no concrete evidence in the record to support plaintiff’s allegation of cruel treatment and that if such cruel treatment is proved, then, in the alternative, that the wife is equally at fault, having provoked the treatment complained of and is, consequently, not entitled to the relief sought. The defendant further contends that in any event he should be given the custody and control of the minor Hayden whose ability and services as a professional racehorse jockey are being exploited by his eldest son and his wife, neither of whom are fit to have the minor or capable of managing his affairs.
 

 The record reveals that the parties were married on November 27, 1906. Of this union twelve children were born, all being majors at the time of the trial of this case, with the exception of Flora, Beulah, Una, and Hayden. The husband is a tenant share-cropper and, with the combined help of his wife and all of the children, eked out a comparatively good living for people in their station of life. All of the children seem to have obtained some education, Maderis, the oldest, being the only one to complete high school. The record also reveals that the plaintiff was in ill health from excessive _ child-bearing and hard work and that she left the marital domicile on numerous occasions following quarrels with her husband, going, in the majority of the cases, to the home of a neighbor or of a married daughter. Following the quarrel upon which this action is based, she moved to New Orleans, where she has been living ever since.
 

 The trial judge was of the opinion that the plaintiff, by a preponderance of the evidence, proved her case and that she is entitled to a separation from bed and board. From-our review of the record, we find that the trial judge is substantiated in this respect by the evidence and we will not, therefore, disturb his ruling on this phase of the case.
 

 We now pass to the matter of the custody and control of the minor Hayden. It appears that Maderis, wh'o had during his younger years served as a jockey, has, since that time, made racing his profession. In the early part of 1936 he took this younger brother, then approximately fourteen years of age, from the home of his mother and father, with their consent, for the purpose of training him as an apprentice jockey. At the time the father instituted the habeas corpus proceedings, the training of Hayden had been completed, and, under the supervision of Maderis, with whom he was under contract with the approval of the Juvenile Court and the consent of his mother (in accordance with the requirements of the racing officials), he was successfully launched in his adopted profession and had proved to be among the better jockeys at the local racing meet. It is conceded by counsel that the father’s sole motive in instituting the
 
 *590
 
 proceedings was to determine who would have the custody and control of the minor and reap the benefit of his earnings as a jockey.
 

 An effort was made to show that the mother is unfit to have the custody and control of Hayden. We find it unnecessary to narrate in detail the testimony of the parties and their several witnesses on this point, for it would serve no useful purpose to reveal the family life and relations of these unfortunate people. Suffice it to say that we are not favorably impressed with the testimony, most of which is unworthy of consideration.
 

 A strenuous effort was also made to establish the unworthiness of the respondent Maderis to manage the business affairs of his minor brother. The trial judge, commenting on the evidence adduced on this phase of the case, said: “* * * there is no way on God’s earth, as far as I can see, that he [the father] could protect that boy’s interests on such a contract. * * I am sure if it was argued before a jury that any twelve men would say the same thing, that if the boy is going to continue to be a jockey, that is the sole question, then there is no man or person in the world I think that is better able to take care of him than this man [his brother, Maderis], who had brought him out and taught him the trade; and everybody knows, if you have any familiarity at all with race tracks or horses, that it takes a whole lot of time to develop a jockey. . * * * ” (Brackets ours.) A review of the record leaves no doubt as to the correctness of the trial judge’s finding in this respect.
 

 For the reasons assigned, the judgment of the lower court is affirmed, at appellant's cost.