For the reasons assigned, the judgment appealed from is affirmed.

199 So. 384

**Emancipation of DUPUY.**

No. 35987.

Dec. 2, 1940.

Bernard Cunniffe, Felix Wilfred Gaudin, Hilary J. Gaudin, and J. J. Grevemberg, Jr., all of New Orleans, for appellant Mrs. Florence Guillory Dupuy.

Michel Provosty and John F. Connolly, both of New Orleans, for appellee Hayden David Dupuy.

PONDER, Justice.

This is an appeal from a judgment of emancipation.

The plaintiff, Hayden Dupuy, a minor over eighteen years of age, instituted this suit seeking emancipation. Attached to the plaintiff's petition is the written assent of his father, Xavier O. Dupuy. An attorney at law was appointed as special tutor to the minor. Rules were issued ordering the special tutor and the plaintiff's mother, Mrs. Florence Guillory Dupuy, to show cause why the emancipation should not be grant-

ed. The special tutor gave his written assent to the emancipation. The plaintiff's mother refused to consent to the emancipation. From the testimony taken on the trial of this case it appears that most of it is devoted to whether or not the plaintiff is competent to manage his affairs and administer his estate. There is some testimony touching the alleged acts and omissions of the mother which the plaintiff claims constitute cruelty and ill treatment. Upon trial the lower court gave judgment emancipating and relieving the minor of all disabilities, with full power as though he had attained the age of twenty-one years. The defendant, the mother, has appealed.

An exception of no cause of action was interposed in the lower court on the ground that the mother's consent was essential to the right of the minor to be emancipated. We see no merit in the exception because there are allegations in the petition that certain omissions and acts of the mother constituted ill treatment. The consent of the mother is not essential if the application be made on the ground of ill treatment. Article 387, R.C.C.

Counsel for the appellant takes the position that the consent of the mother is essential to the emancipation except in the cases of ill treatment, refusal to support, or corrupt examples. Counsel relies on the provisions of Article 387, R.C.C.

Counsel for the appellee takes the position that Articles 385 and 386, R.C.C., are written for the favor and benefit of the minor and not for the benefit of the parents. Counsel contends that when the interest of the minor demands the emancipation and

the mother has no substantial reason to refuse her consent that the court should weigh her reasons, if any, and substitute its, the court's own consent, and consent for the mother.

The issue raised by these contentions is whether or not the consent of the mother is essential in cases other than those of ill treatment, refusal to support or corrupt examples.

Article 385, R.C.C. "Whenever a minor, over the age of eighteen years, shall desire to be relieved from the time prescribed by law for attaining the age of majority, he shall present a petition to the judge having jurisdiction, wherein he shall set forth the reasons therefor and also the amount of his estate. This petition shall be accompanied by the written assent of the tutor, if there be one, otherwise by that of a special tutor appointed for that purpose; and this assent shall contain the specific declaration that the minor is fully capable of managing his own affairs. If the tutor refuses to give his assent to such emancipation, or shall refuse to appear by way of answer in the application of the minor, he shall be cited according to law, to show cause why the minor should not be emancipated."

Article 386, R.C.C. "The judge, either in open court or in chambers, after hearing the parties, shall render judgment in the premises. If there be a decree of emancipation, it shall declare that the minor is fully emancipated and relieved of all the disabilities which now attach to minors, and with full power to do and perform all acts as fully as if he had arrived at the age of twenty-one years."

Article 387, R.C.C. "If any minor, desiring to avail himself of the provisions of the two preceding articles, has a father or mother living, the consent of the father or mother, or both, shall be necessary to authorize the judge to act; but such consent shall not be necessary if the application be made on the ground of ill treatment, refusal to support, or corrupt examples."

Previous to the institution of this suit the plaintiff's mother obtained a judgment of separation from bed and and board from her husband, Xavier O. Dupuy, the plaintiff's father, and the custody of the plaintiff, the minor, was awarded to the mother. By such judgment the father of the plaintiff was divested of all parental authority over the plaintiff and under such circumstances it is the mother's consent that is essential. State v. Sacred Heart Orphan Asylum, 154 La. 883, 98 So. 406. At the outset of this discussion, it might be well to note that our law does not favor the displacement of parental authority without the consent of the parents. State v. Sacred Heart Orphan Asylum, supra, 154 La. at page 890, 98 So. 406. Whatever right the plaintiff might have to be emancipated must be derived from the above-quoted Articles of the Civil Code and if his right to such does not come within the provisions of these Articles it must be denied. From a mere reading of the aforementioned Articles of the Civil Code it is apparent that the consent of the parents is essential and necessary to give the court authority to entertain the suit. Under the provisions of Article 387 of the Civil Code, when the father and mother

are both living, the court is without authority to entertain the emancipation proceedings without the father's and mother's consent, except such consent is not necessary if the application is made on the ground of ill treatment, refusal to support, or corrupt examples. It is the mother's consent that is essential when the father has been divested of his parental authority. It does not appear from these Articles of the Civil Code that the reasons why the consent is refused is of any moment except in the case of a tutor refusing to consent to the emancipation. Under the provisions of Article 385, R.C.C., the court may·inquire into the reasons why the tutor refuses to give his consent. The provision in the Article with reference to a tutor contemplates that the minor has neither father nor mother. This is made clear by Article 387, R.C.C., which requires either, or both, parent's consent if either, or both, of them are living. Under the provisions of Article 387, R.C.C., the parental consent is absolutely essential to the court's authority to act except in the cases especially excepted. The reason why the parental consent is refused can be of no moment is because the court is not authorized to even entertain the application without the parental consent except in the cases of ill treatment, refusal to support, or corrupt examples. The reason why the refusal of consent in the excepted cases is of no moment is because it is immaterial whether the consent is given or not. There is no law that authorizes the courts in this State to substitute parental consent. The importance of parental control, the right of the parent to the enjoyment of the estate

of their child, and the wisdom of the law in maintaining the paternal authority until the minor reaches majority is discussed in the case of Prieto v. St. Alphonsus Convent of Mercy, 52 La.Ann. 631, 27 So. 153, 47 L.R.A. 656. It is stated therein that the parental control is the fundamental principle that lies at the foundation of society and was intended to support and maintain the exercise of parental authority in the family and home and to guard and protect the children of the family until their minds should become sufficiently cultivated and their judgment sufficiently matured to enable them to make judicious and proper selection of places of abode for themselves. The consent of the mother in this case is essential and the court is not authorized to entertain the application for emancipation unaccompanied by her consent, except upon the showing of ill treatment, refusal to support, or corrupt examples.

■■ Counsel for the appellee further contends that the plaintiff is entitled to emancipation because of the mother's ill treatment even though she refused to consent to the emancipation.

The consent of the mother is not necessary in the case of ill treatment. Article 387, R.C.C. It is contended that the mother is under the domination of the plaintiff's elder brother, Maderis, and that Maderis is dissipating the plaintiff's finances and estate. Only recently, in the case of Guillory v. Dupuy, 195 La. 585, 197 So. 240, we had occasion to examine into the question of whether or not it was conducive to the minor's interest for Maderis to manage his affairs. We reviewed in

that case how Maderis took the plaintiff and trained him as an apprentice jockey under a contract with the plaintiff which was made with the consent of his parents. We came to the conclusion in that case that the management of Maderis was conducive to the minor's interest. It now appears that Maderis has sold this contract to Mr. Warren Wright of the Calumet Farms for $7,500. Mr. Wright entered into a riding contract with the plaintiff and his mother on July 18, 1939, whereby the plaintiff was to receive $200 a month for the first year, $300 per month the second year, and $400 per month for the third year. It was also provided in the contract that the plaintiff was to receive jockey fees and a percentage of all purses won on horses ridden by him. The contract provided that 40 per cent of the salary was to be paid to the plaintiff's mother and the balance to be paid to the plaintiff. All payments have been made on this basis since the contract was signed. After riding a number of horses for Mr. Wright the plaintiff has not been called on to ride for some time. The testimony shows that the plaintiff has been suspended on several occasions for a short period of time for violating riding rules. The preponderance of the testimony shows that the reason the plaintiff is not permitted to ride is because the plaintiff's attitude is such that it is not conducive to the best interest of the stables. The plaintiff will not follow the instructions of the trainer and does not appear to have the interest in his work that he should have. Mr. Wright has appeared herein and offered to cancel the plaintiff's contract. From the evidence in this case

it appears that a small percent of the plaintiff's testimony is devoted to the question of ill treatment. The plaintiff's testimony is not supported by the testimony of any other witness. On the other hand, his testimony is refuted by the testimony of his mother, Maderis, Mr. Jones, the trainer for Mr. Wright, and others. It appears that the ill treatment claimed herein is largely based on the ground that Maderis would not give the plaintiff a part of the amount he received from the contract sold to Mr. Wright and the mother's refusal to cancel the contract with Mr. Wright. The plaintiff testified that he was entitled to a part of the amount received by Maderis from Mr. Wright for the contract. The testimony of Maderis refutes this testimony. Maderis' testimony is corroborated to some extent by the testimony of the plaintiff's mother and that of Placide Frigerio. We do not find that the testimony supports the plaintiff's contention that Maderis has dissipated the plaintiff's finances. As to whether or not the contract with Mr. Wright is for the best interest of the plaintiff, it is difficult to determine. The plaintiff has been drawing $120 a month for the first year and we presume is drawing $180 per month at this time under the provisions of the contract. From the testimony it does not appear that the mother is in any way restraining the plaintiff in the use of his money or in any way interfering with his work. In fact, it is the neglect of the plaintiff to heed instructions of the trainer and take the proper interest in his work that is causing the trouble. It is true the mother is getting 40 percent of the salary to support her

and her fifteen year old daughter, the plaintiff's sister. This appears to be their main means of support. The mother is entitled to the enjoyment of the estate of the minor. Article 223, R.C.C. The minor testified that the contract with Mr. Wright is injurious to him, but this is contradicted by the testimony of the mother and Maderis. The contract is considered a good contract by the testimony of Mr. Frigerio. However it may be, it is a difficult question to determine because if the minor is released and takes a similar attitude towards another employment the same situation would be presented. Moreover, there is no evidence in the record going to show that the minor could obtain as profitable a contract as the one involved herein except the bare statement of the minor that he could get employment from two different sources. The minor testified that if he is emancipated that he would make a contract with his father and go back to small meetings and gradually work up to where he could get himself a good job with good pay. It would appear that if the minor were emancipated and entered into the contract with his father it would be equivalent to permitting the father to deprive the mother of the control of the minor. We stated in effect in the case of State v. Sacred Heart Orphan Asylum, supra, that the father who had been divested of parental authority did not have any right to deprive the mother of the control of the minor by emancipating the minor. In view of the plaintiff's own testimony the father would in a manner be depriving the mother of the control of the minor and the enjoyment of the minor's estate.

Under the circumstances in this case we cannot say that the mother has ill treated the plaintiff. Moreover, in this case we are not prepared to say that it would be to the best interest of the minor to cancel the contract.

It is unnecessary for us to go into the testimony touching the minor's ability to manage his own affairs since we have arrived at the conclusion that the plaintiff's mother is not guilty of ill treatment to the minor.

For the reasons assigned the judgment of the lower court is reversed and set aside and it is now ordered, adjudged and decreed that plaintiff's suit be dismissed at his cost.

O'NIELL, C. J., and HIGGINS, J., concurs in the result.